[Cite as *In re B.F.*, 2017-Ohio-609.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
LUCAS COUNTY

In re B.F., H.S., N.S.

Court of Appeals No. L-16-1094

Trial Court No. JC 13234854

**DECISION AND JUDGMENT**

Decided:   February 17, 2017

* * * * *

Laurel A. Kendall, for appellant.

Angela Y. Russell, for appellee.

* * * * *

**JENSEN, P.J.**

## I.  Introduction

**{¶ 1}** Appellant, M.S., appeals the judgment of the Lucas County Court of Common Pleas, Juvenile Division, terminating his parental rights and awarding permanent custody of his children, H.S. and N.S. (the "children"), to appellee, Lucas County Children Services ("LCCS").  For the reasons that follow, we affirm.

## A. Facts and Procedural Background

{¶ 2} On August 26, 2013, the juvenile court received information from LCCS that the children appeared to be dependent, neglected, and/or abused. The report followed a referral that was received by LCCS, detailing that another of appellant's children, C.S., appeared to have a black eye. C.S. was taken to the hospital and was diagnosed with two brain bleeds, a skull fracture, and a contusion on her shoulder. Appellant blamed C.S.'s mother (and the mother of the children that are the subject of the instant case), Bry.F., for the injuries. Bry.F., in turn, asserted that appellant was responsible for the injuries.[1]

{¶ 3} Three days after receiving the above information, the juvenile court issued an ex parte order directing LCCS to remove the children from the home and take them into shelter care custody, with a hearing to be held within 72 hours of the issuance of the ex parte order. At the subsequent hearing, the court found probable cause to warrant the continuance of shelter care with LCCS to protect the children from immediate or threatened physical or emotional harm. Additionally, the court ordered that appellant complete a diagnostic and substance abuse assessment, as well as a drug screening, arranged by LCCS. The court appointed counsel for appellant and scheduled the matter for an adjudication hearing.

---

[1] The juvenile court's order also terminates Bry.F.'s parental rights. However, Bry.F. is not a party to this appeal since she failed to file a notice of appeal. Further, appellant is not the father of B.F. Although B.F. is included in the caption of this case, we are not reviewing the trial court's termination of parental rights in B.F. as B.F.'s parents are not parties to this action.

2.

{¶ 4} On September 25, 2013, LCCS filed its original case plan with the juvenile court. According to the case plan, the permanency goal for the children at that time was permanent placement with a relative. Services were not set forth for appellant in the original case plan.

{¶ 5} At the subsequent adjudicatory hearing held on January 16, 2014, appellant appeared before the juvenile court and consented to a finding that the children were dependent. At the conclusion of the hearing, the court found that several "family problems" existed, including issues regarding the parties' mental health, substance abuse issues, allegations of domestic violence, and parenting issues.

{¶ 6} Thereafter, LCCS filed an amended case plan, in which the permanency goal for the children was modified to provide for reunification of the children with their parents. Appellant was instructed to complete a psychological assessment, parenting education, a domestic violence batterers program, and anger management as part of the amended case plan. Appellant was also permitted to have level one visitation with the children at LCCS. Two days after the amended case plan was filed, LCCS notified the juvenile court that the children were removed from foster care and placed into the custody of appellant's sister, K.S.

{¶ 7} On October 24, 2014, K.S. filed a pro se motion for legal custody of the children. In her motion, K.S. asserted that the children had been living in her home since January 2014 and were thriving. While the motion was pending, LCCS received information that K.S. had maintained a relationship with "her significant other," in

3.

contradiction to her prior testimony that the relationship had ceased. Consequently, LCCS removed the children from K.S.'s home. The juvenile court ultimately denied K.S.'s motion for legal custody in light of the false information she provided to LCCS.

{¶ 8} Two months later, LCCS filed an emergency change notification with the juvenile court, in which it alerted the court to the fact that appellant's level one visitations were terminated pending an investigation into threats appellant made toward LCCS staff.

{¶ 9} On April 1, 2015, LCCS filed its motion for permanent custody. In the motion, LCCS detailed appellant's failure to make sufficient progress on his case plan to reunify with the children. Specifically, LCCS alleged that appellant completed a substance abuse assessment, but failed to follow the recommendations that followed the assessment. Further, appellant allegedly refused to provide a urine screen in December 2014. Moreover, LCCS stated that appellant failed to comply with other case plan requirements including the completion of a domestic violence batterer's program, an anger management program, and parenting services. In its motion, LCCS stated its concern that appellant displayed "controlling behavior over his significant others." LCCS went on to indicate that appellant had been accused of abuse regarding one of his other children in Wood County during the pendency of this case. Finally, LCCS cited the fact that appellant had been charged with felony child endangering regarding the abuse of C.S. as support for its motion for permanent custody.

{¶ 10} As a result of appellant's failure to progress on his case plan, LCCS asserted that the children could not be placed with either of their parents within a

4.

reasonable time or should not be placed with their parents and permanent custody was in the children's best interests.  Additionally, LCCS stated that permanent custody was proper under R.C. 2151.414(B)(1)(d) because the children were in LCCS custody for 12 or more months of a consecutive 22-month period.

{¶ 11} A dispositional hearing on LCCS's motion for permanent custody was subsequently conducted over the course of several months.  At the conclusion of the hearing, the juvenile court granted LCCS's motion for permanent custody, finding that the children could not and should not be placed with appellant within a reasonable period of time under R.C. 2151.414(E), and that a grant of permanent custody to LCCS was in the children's best interests under R.C. 2151.414(D).  Additionally, the court found the children were in LCCS custody for 12 or more months of a consecutive 22-month period.

{¶ 12} Appellant's timely appeal followed.

### B.  Assignments of Error

{¶ 13} On appeal, appellant assigns the following errors for our review:

I.  The trial court committed reversible error when it allowed the agency to withhold case plan services from appellant without notice or due process in violation of appellant's Fifth Amendment rights.

II.  The trial court erred by finding that Lucas County Children Services had made reasonable efforts to reunify the family when case plan services were refused to father in violation of R.C. 2151.412.

5.

## II. Analysis

{¶ 14} In *Troxel v. Granville*, 530 U.S. 57, 65, 120 S.Ct. 2054, 147 L.Ed.2d 49 (2000), the United States Supreme Court noted that parents' interest in the care, custody, and control of their children "is perhaps the oldest of the fundamental liberty interests recognized by this Court." The protection of the family unit has always been a vital concern of the courts. *Stanley v. Illinois*, 405 U.S. 645, 651, 92 S.Ct. 1208, 31 L.Ed.2d 551 (1972).

{¶ 15} Ohio courts have long held that "parents who are 'suitable' persons have a 'paramount' right to the custody of their minor children." *In re Perales*, 52 Ohio St.2d 89, 97, 369 N.E.2d 1047 (1977). Therefore, parents "must be afforded every procedural and substantive protection the law allows." *In re Smith*, 77 Ohio App.3d 1, 16, 601 N.E.2d 45 (6th Dist.1991).

{¶ 16} Thus, a finding of inadequate parental care, supported by clear and convincing evidence, is a necessary predicate to terminating parental rights. "Before any court may consider whether a child's best interests may be served by permanent removal from his or her family, there must be first a demonstration that the parents are 'unfit.'" *In re Stacey S.*, 136 Ohio App.3d 503, 516, 737 N.E.2d 92 (6th Dist.1999), citing *Quillon v. Walcott*, 434 U.S. 246, 255, 98 S.Ct. 549, 54 L.Ed.2d 511 (1978). Parental unfitness is demonstrated by evidence sufficient to support findings pursuant to R.C. 2151.414. *See In re William S.*, 75 Ohio St.3d 95, 661 N.E.2d 738 (1996), syllabus.

6.

**{¶ 17}** "A trial court's determination in a permanent custody case will not be reversed on appeal unless it is against the manifest weight of the evidence." *In re A.H.*, 6th Dist. Lucas No. L-11-1057, 2011-Ohio-4857, ¶ 11, citing *In re Andy-Jones*, 10th Dist. Franklin Nos. 03AP-1167, 03AP-1231, 2004-Ohio-3312, ¶ 28. In conducting a review on manifest weight, the reviewing court "weighs the evidence and all reasonable inferences, considers the credibility of the witnesses and determines whether in resolving conflicts in the evidence, the [trier of fact] clearly lost its way and created such a manifest miscarriage of justice that the [judgment] must be reversed and a new trial ordered." *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997); *Eastley v. Volkman*, 132 Ohio St.3d 328, 2012-Ohio-2179, 972 N.E.2d 517, ¶ 17. We recognize that, as the trier of fact, the trial court is in the best position to weigh the evidence and evaluate the testimony. *In re Brown*, 98 Ohio App.3d 337, 342, 648 N.E.2d 576 (3d Dist.1994). Thus, "[I]n determining whether the judgment below is manifestly against the weight of the evidence, every reasonable intendment and every reasonable presumption must be made in favor of the judgment and the finding of facts." *Eastley* at ¶ 21, quoting *Seasons Coal Co., Inc. v. Cleveland*, 10 Ohio St.3d 77, 80, fn. 3, 461 N.E.2d 1273 (1984).

### A. Adequacy of Case Plan Services

**{¶ 18}** In his first assignment of error, appellant argues that the juvenile court erred in allowing LCCS to withhold case plan services without notice or due process.

**{¶ 19}** Under R.C. 2151.412, LCCS was required to "prepare and maintain a case plan" for the children in this case. Appellant takes issue with the fact that LCCS did not

7.

initially provide case plan services to him.  Such services were withheld pursuant to an agency policy that prohibited LCCS from offering services until appellant was ruled out as the perpetrator of C.S.'s injuries.

{¶ 20} While it is true that case plan services were not initially offered to appellant, the testimony presented at the dispositional hearing clearly establishes that case plan services were made available to appellant almost 18 months prior to the dispositional hearing.

{¶ 21} At the dispositional hearing, LCCS called Deborah Wedding as one of its witnesses.  Wedding is a caseworker for LCCS who began working this case in November 2013.  According to Wedding, LCCS removed the children from appellant's home after discovering C.S.'s head injuries.  At the time of removal, LCCS had not determined the cause of C.S.'s injury or who was ultimately responsible.  Therefore, LCCS removed the children from appellant's home pursuant to agency policy, citing safety concerns.

{¶ 22} Upon removal, LCCS planned to permanently place the children with a relative.  Because of their failure to acknowledge what happened to C.S., Bry.F. and appellant were not initially offered case plan services.   However, another case plan was developed in January 2014 with the goal of reunification.  At this time, case plan services were offered to Bry.F. and appellant.  According to Wedding, appellant's case plan services included "mental health services, substance abuse services, a psychological

8.

assessment, stable housing, domestic violence batterer's intervention, anger management, psychological evaluation, and * * * interactive parenting."

{¶ 23} At the conclusion of the mental health and substance abuse assessment, appellant was diagnosed with personality disorder and recommended for counseling. Appellant did not complete counseling. Instead, appellant insisted that he would only begin counseling if LCCS would pay for it. Wedding testified that LCCS does not pay for such services. Rather, the agency directs individuals such as appellant to apply for Medicaid benefits, which appellant failed to do in this case. Despite LCCS's recommendation, appellant indicated that he did not believe that counseling would be beneficial.

{¶ 24} Following the substance abuse assessment, appellant was recommended for alcohol and drug treatment, which appellant refused. Wedding testified that appellant also refused to comply with her request that he complete a urine screen after he appeared in court smelling of alcohol.

{¶ 25} In May 2014, appellant sought out parenting and anger management services through the Providence Center. However, appellant failed to sign a release of information at that time so that LCCS could monitor appellant's progress and pay for the parenting services through Providence. The release of information was eventually signed in July or August, and the services commenced. As of the date of the dispositional hearing, LCCS had not received a certification of successful completion from Providence. According to Wedding, appellant "was not going regularly enough to

9.

complete that service and there were no reports received from Providence Center other than attendance, but not an actual progress report per se."

{¶ 26} Concerning appellant's referral to domestic violence batterer's intervention, Wedding stated that appellant failed to complete the program because he was arrested. Wedding also testified that appellant refused to acknowledge that he was a perpetrator of domestic violence. The referral to domestic violence batterer's intervention stemmed from Bry.F.'s reports of domestic violence.

{¶ 27} Contrary to appellant's assertion that he was denied case plan services in this case, the foregoing evidence demonstrates that appellant was, in fact, offered case plan services well in advance of the dispositional hearing. Appellant refused to take advantage of such services.

{¶ 28} Additionally, it is worth noting that appellant was eventually found to be responsible for the injuries to C.S. Prior to the dispositional hearing, appellant was found guilty of one count of endangering children in violation of R.C. 2919.22(B)(3) and (E)(3), and one count of making terroristic threats in violation of R.C. 2909.23(A)(1)(c) and (C), felonies of the third degree. The endangering children count stemmed from the physical injuries to C.S. The charge for making terroristic threats related to threats directed at LCCS. As a result of his convictions, appellant was sentenced to three years in prison, a sentence he was serving at the time of the dispositional hearing.

10.

**{¶ 29}** In light of the foregoing, we find no merit to appellant's argument that he was deprived of case plan services. Accordingly, appellant's first assignment of error is not well-taken.

### B. Reasonable Efforts

**{¶ 30}** In his second assignment of error, appellant argues that the trial court erred by finding that LCCS made reasonable efforts to reunify the family under R.C. 2151.419.

**{¶ 31}** R.C. 2151.419 provides, in relevant part:

> (A)(1) Except as provided in division (A)(2) of this section, at any hearing held pursuant to section 2151.28, division (E) of section 2151.31, or section 2151.314, 2151.33, or 2151.353 of the Revised Code at which the court removes a child from the child's home or continues the removal of a child from the child's home, the court shall determine whether the public children services agency * * * that filed the complaint in the case, removed the child from home, has custody of the child, or will be given custody of the child has made reasonable efforts to prevent the removal of the child from the child's home, to eliminate the continued removal of the child from the child's home, or to make it possible for the child to return safely home.

**{¶ 32}** The Ohio Supreme Court has held that the reasonable-efforts requirement found in R.C. 2151.419(A)(1) does not apply in a hearing on a motion for permanent custody filed pursuant to R.C. 2151.413. *In re C.F.*, 113 Ohio St.3d 73, 2007-Ohio-1104,

862 N.E.2d 816, ¶ 41. "By its terms, the reasonable-efforts statute applies only to adjudicatory, emergency, detention and temporary-disposition hearings for abused, neglected or dependent children, all of which occur prior to a decision transferring permanent custody to the state." *In re C.K.*, 6th Dist. Lucas No. L-16-1801, 2016-Ohio-8002, ¶ 28. The statute makes no reference to a hearing on a motion for permanent custody. *Id.* Therefore, we find that the juvenile court was not required to make a reasonable-efforts finding under R.C. 2151.419. Accordingly, appellant's second assignment of error is not well-taken.

### III. Conclusion

{¶ 33} In light of the foregoing, the judgment of the Lucas County Court of Common Pleas, Juvenile Division, is affirmed. Costs of this appeal are assessed to appellant pursuant to App.R. 24.

Judgment affirmed.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.

Arlene Singer, J. _____

_____
JUDGE

Thomas J. Osowik, J. _____

_____
JUDGE

James D. Jensen, P.J. _____
CONCUR.

_____
JUDGE

12.

This decision is subject to further editing by the Supreme Court of
Ohio's Reporter of Decisions.  Parties interested in viewing the final reported
version are advised to visit the Ohio Supreme Court's web site at:
http://www.sconet.state.oh.us/rod/newpdf/?source=6.